UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff(s),<br><br>      v.<br><br>RICK LEE ARCHER,<br><br>                          Defendant(s). | Case No. 2:93-CR-259 JCM<br><br>ORDER |

Presently before the court is Gene Michael Diulio's ("defendant") motion for compassionate release. (ECF No. 160). The United States of America ("the government") filed a response (ECF No. 163), to which defendant replied (ECF No. 164).

Judge George then held the motion in abeyance and ordered supplemental briefing. (ECF No. 165). Defendant and the government both filed supplemental briefs. (ECF Nos. 167; 169). The motion is now ripe for consideration.

**I.     Background**

As relevant to this motion, Judge Lloyd D. George sentenced defendant to 188 months on one count of federal armed bank robbery and 60 months on one count of federal escape to run concurrently to each other, but consecutive to the remainder of a federal sentence he was serving prior to his escape from Lompoc United States Penitentiary. (ECF No. 98). Defendant has served over 26 years in prison. (ECF No. 160 at 2).

While defendant has been incarcerated, the novel strain of coronavirus and COVID-19, the resultant respiratory disease, have run rampant throughout the country and the world. While the court need not reiterate the well-known effects COVID-19 has had on day-to-day life, "[s]ome people are more likely than others to become severely ill, which means that they may

**James C. Mahan**
**U.S. District Judge**

require hospitalization, intensive care, or a ventilator to help them breathe, or they may even die." *See* Center for Disease Control, *People Who Are at Increased Risk for Severe Illness,* (June 25, 2020).[1]  People with certain underlying medical conditions are particularly susceptible to COVID-19.  Center for Disease Control, *People of Any Age with Underlying Medical Conditions,* (June 25, 2020).[2]

The CDC's list of at-risk persons has expanded, and new studies on COVID-19 vis-à-vis comorbidities continue to be promulgated.  *Id.*; *see also*, *e.g.,* Xianxian Zhao, et al., *Incidence, clinical characteristics and prognostic factor of patients with COVID-19: a systematic review and meta-analysis* (March 20, 2020);[3] Safiya Richardson, et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area* (April 22, 2020).[4]

Defendant petitioned the BOP on May 4, 2020, and his counsel supplemented the request on May 12.  (ECF No. 167 at 4).  Defendant had not exhausted his administrative remedies with the Bureau of Prisons ("BOP") before initially moving this court for compassionate release, so Judge George held the motion in abeyance.  (ECF No. 165 at 2).

Defendant, who is 57 years old, contends that his non-Hodgkin's lymphoma (in remission), Hepatitis C, and hypertension, among other medical conditions, in conjunction with the COVID-19 pandemic, justify compassionate release.  (ECF No. 160).  The government opposes defendant's motion, arguing that his conditions—even in light of the COVID-19 pandemic—do not amount to an extraordinary and compelling reason for relief.  (ECF No. 163).  The government further argues that, if released, defendant would present a danger to other persons and to the community.  *Id.*

---

[1] Available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.

[2] Available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[3] Available at https://www.medrxiv.org/content/10.1101/2020.03.17.20037572v1.full.pdf.

[4] Available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

**II.      Legal Standard**

"Even though courts ordinarily have the inherent authority to reconsider its [their] prior orders, such authority does not exist when there is an 'express rule to the contrary.'" *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999).  One such contrary rule is relevant here: "A court generally may not correct or modify a prison sentence once it has been imposed."  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)).  Instead, the court may modify a sentence only when expressly authorized by statute.

The court is expressly authorized to modify a sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  18 U.S.C. § 3582(c)(1)(A).  However, courts may consider compassionate release only "upon motion of the Director of the Bureau of Prisons . . . ." *Id.*  If a defendant wants to file such a motion with the court, he must fully exhaust his administrative remedies before doing so.  *Id.*  Since the enactment of the First Step Act, a defendant may file a compassionate-release motion if his application to the BOP goes unanswered for thirty days.  *Id.*

To be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  Under USSG § 1B1.13, "extraordinary and compelling reasons" include, amongst other things, terminal illnesses and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.

**III.     Discussion**

The court first considers whether defendant's medical conditions justify compassionate release in light of the COVID-19 pandemic that continues to sweep the nation, particularly the nation's prison system.  Defendant has sufficiently demonstrated his medical conditions, most notably non-Hodgkin's lymphoma (in remission), Hepatitis C, and hypertension, so the court must determine whether these conditions place him at heightened risk of contracting COVID-19

and suffering acutely therefrom such that he cannot "provide self-care within the environment of a correctional facility . . . ." USSG § 1B1.13.

The CDC has indicated that there might be an increased risk for severe illness from COVID-19 for people who are immunocompromised due to immune-weakening medicines, who have liver disease, and/or those with hypertension. Center for Disease Control, *People of Any Age with Underlying Medical Conditions,* (June 25, 2020). Defendant's hypertension, on its own, would be concerning but not cause for compassionate release because the CDC has indicated "people whose only underlying medical condition is hypertension are not considered to be at higher risk for severe illness from COVID-19." Center for Disease Control, *Clinical Questions about COVID-19: Questions and Answers*, (July 7, 2020).[5] But defendant received 8 cycles of R-CHOP chemotherapy treatments in December 2018, to treat his Stage III-E diffuse large B-cell lymphoma. (ECF No. 160 at 18). And defendant also has Hepatitis C, a liver infection. Center for Disease Control, *Hepatitis C*, (June 22, 202).[6]

The court finds that the lymphoma and attendant chemotherapy treatment, Hepatitis C, and hypertension place defendant at an increased risk of contracting and being severely impacted by COVID-19. Indeed, "in May 2019, due to [defendant]'s serious medical conditions, the BOP designated him as needing Care Level 3, describing him as 'Unstable, Complex Chronic Care.'" (ECF No. 167 at 4). This constellation of serious chronic medical conditions places defendant at such increased risk that his ability to provide self-care within the environment of the correctional facility is substantially diminished, especially because there has been a recent uptick in cases at the Butner Federal Correction Complex, where defendant is housed.[7] (ECF Nos. 165; 167).

---

[5] Available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.

[6] Available at https://www.cdc.gov/hepatitis/hcv/.

[7] The government urges the court to consider COVID-19 cases in only Butner FCI Medium II, one of four facilities within the Butner Federal Correction Complex. (*See generally* ECF No. 167). The court will consider all cases at the Butner Federal Correction Complex both because the novel strain of coronavirus is particularly contagious and because inmates can—and are—moved between facilities. (ECF No. 167 at 3 ("And as previously explained, it is believed there have been more confirmed COVID-19 cases in Butner Medium II, but **infected inmates are transferred to FCI Butner Low** as that [is] the 'isolation unit that is physically separated from the rest of the' Federal Location Monitoring Unit for Butner." (emphasis added)).

**James C. Mahan**
**U.S. District Judge**

- 4 -

The court finds that defendant's medical conditions during this pandemic constitute "extraordinary and compelling reasons" that militate toward release. Accordingly, the court must consider whether defendant presents a danger to other persons or to the community.

Defendant indisputably presented a danger to other persons and to the community when he sentenced in the present matter. As the government notes, defendant was in federal prison for kidnapping before executing a *Shawshank Redemption*-esque escape by "crawling through a drain pipe that led outside of the prison grounds" and fleeing to Las Vegas, where he committed armed robbery of a bank. (ECF No. 163 at 2). Put plainly, defendant had already been convicted of a violent crime, escaped from prison while serving his sentence for that offense, committed another violent crime while he was a fugitive, and was then convicted for that additional violent crime. Judge George sentenced defendant to concurrent terms of 60 months' incarceration for escape and 188 months' incarceration for armed bank robbery, which would run consecutively to defendant's prior federal sentence.

Defendant represents that he "has served 26 years and 7 months of his total sentence—over 75% of his prison term" (ECF No. 160 at 30) and that his sentence is set to naturally expire on December 18, 2023, (ECF No. 164 at 15). Defendant urges that "[t]here is simply nothing the next two years of incarceration will add to the statutory goals of sentencing that the last 26 have not." *Id.* The court agrees.

Over the course of his incarceration, defendant admittedly accrued "five or six disciplinary infractions," but has "successfully completed over 15 years of incarceration without even a minor infraction." (ECF No. 160 at 30). Defendant has maintained employment within the BOP's Unicor program, has taken courses and classes during his incarceration. (ECF No. 167 at 4). Moreover, defendant's individualized reentry plan "indicates the BOP intended to consider Mr. Diulio for referral to . . . [a] [r]esidential [r]eentry [c]enter or halfway house" for roughly the last year and a half of his sentence. (ECF No. 167 at 3).

The court finds that defendant's lengthy term of incarceration, his rehabilitative strides while incarcerated, and his good conduct for the last 15 years militate toward release. Thus, the

**James C. Mahan**
**U.S. District Judge**

court finds that defendant does not pose a threat to the community, particularly because the BOP was willing to consider him for early release to a residential reentry center.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for compassionate release (ECF No. 160) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's sentence of imprisonment be, and the same hereby is, MODIFIED from an aggregated 188 months' incarceration to CREDIT FOR TIME SERVED.

IT IS FURTHER ORDERED that defendant shall be quarantined for a 14-day period prior to being released.  Defendant shall be released from custody within 48 hours after the expiration of his 14-day quarantine.

IT IS FURTHER ORDERED that defendant's counsel shall, within 7 days of this order, contact the BOP to arrange transportation.

IT IS FURTHER ORDERED that defendant shall serve the remaining portion of the original term of imprisonment (as calculated by the BOP) as supervised release with the special condition that he shall be subject to home incarceration without the requirement of electronic monitoring for the time being.

IT IS FURTHER ORDERED that defendant shall not be required to report to the U.S. Probation Office in person.  However, within 72 hours of his release, defendant shall contact the U.S. Probation Office in Las Vegas, Nevada by telephone to check in.[8]

IT IS FURTHER ORDERED that defendant shall be restricted to his residence at all times (home incarceration) except for medical necessities and/or other activities specifically approved by U.S. Probation or this court.

---

[8] Defendant intends to live with his long-time friend in New Jersey.  (ECF No. 167 at 16).  But defendant, having been sentenced in Nevada, is subject to supervision in Nevada. Nothing in this order prevents the U.S. Probation Office from authorizing defendant to reside in New Jersey or formally transferring jurisdiction over his supervision to the District of New Jersey.

**James C. Mahan**
**U.S. District Judge**

- 6 -

IT IS FURTHER ORDERED that defendant shall serve 5 years of supervised release as originally imposed.

IT IS FURTHER ORDERED that, in light of the COVID-19 pandemic, the current standard condition mandating that defendant work at least 30 hours per week at a lawful type of employment and participate in community service is temporarily suspended.

IT IS FURTHER ORDERED that all other conditions of supervision originally imposed shall remain in effect.

DATED July 20, 2020.

_____
UNITED STATES DISTRICT JUDGE